NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| CAROLYN WALDRON, and DENISE WALDRON | : : : : | |
| Plaintiffs, | : : | Civil No. 19-16928 (RBK/KMW) |
| v. | : : : | **OPINION** |
| LISA KOZACHYN, et al., | : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiffs' *in forma pauperis* ("IFP") Complaint (Doc. No. 1 ("Compl.")), in which Plaintiffs Carolyn and Denise Waldron allege their apartment complex and its employees violated numerous federal and state laws in attempting to enforce an age restriction against Denise. Having already granted Plaintiffs' application to proceed IFP, the Court now assesses the plausibility of the Complaint's allegations pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons below, Plaintiffs' Complaint is **DISMISSED**.

I.     **BACKGROUND**

As alleged in the Complaint, Plaintiffs Carolyn and Denise Waldron are mother and daughter. (Compl. at ⁋ 19). At the time the complaint was filed, Carolyn was 81 years old, while Denise was 54. (*Id*. at 21). In November 2017, Carolyn moved into the Barrington Mews apartment complex, managed by Defendant AAH Property Management Company, Inc. ("AAH"). (*Id*. at ⁋ 23). Barrington Mews is subsidized by the state of New Jersey and houses the elderly and disabled, generally requiring residents to have a minimum age of 55. (*Id*. at ⁋ 25). The complaint is unclear

1

as to whether Barrington Mews is an independent legal entity. (Compl. at ¶ 2 (stating that Barrington Mews is "a corporation or DBA")).

Although only Carolyn met this age-cutoff and was listed on the lease, Denise moved with Carolyn into Barrington Mews. (*Id.* at ¶ 23). Carolyn suffered from Congestive Heart Failure and relied on Denise to care for her. (*Id.* at ¶¶ 41, 44). In March 2018, Denise obtained a power of attorney for Carolyn. (*Id.* at ¶ 26). Denise resided with Carolyn at Barrington Mews without incident from November 2017 until February 2019, when she visited Texas. (Compl. at ¶¶ 23–24).

Upon returning from Texas in July 2019, Denise resumed her residence at Barrington Mews. (Compl. at ¶ 24). Despite poor conditions at the complex and bullying from the staff, on July 29, 2019 Denise contacted Lisa Kozachyn, a Barrington Mews employee, to inquire about renting a two-bedroom apartment for her and Carolyn. (*Id.* at ¶ 29). Kozachyn refused to speak with Denise, but Michael Katz, a partner at the firm of Paul & Katz, P.C., and counsel to AAH, wrote to Carolyn to inform her she would have to supply AAH with evidence of medical need in order to have Denise live wither her a caretaker. (*Id.* at ¶ 29–32).

In order to obtain evidence of her medical need, Carolyn contacted Stephanie Potter, an employee at Life at Lourdes, a facility where Carolyn received medical services. (*Id.* at ¶ 37). Although Potter initially supported the idea that Denise should care for Carolyn, after speaking with Helene Cohen, a Barrington Mews employee, Potter switched course and refused to provide Carolyn with the required documentation. (*Id.*). Instead, Potter gave Denise a list of Camden County Homeless Shelters in an apparently threatening manner. (*Id.*).

Meanwhile, Denise contacted Richard A. Haase of Missouri City, Texas to help her deal with Barrington Mews and AAH. (*Id.* at ¶ 29). Haase did not succeed. (*Id.* at ¶ 30). As instructed by Katz, Carolyn executed a power of attorney for Haase, but he was still unable to make any

progress. (*Id*. at ¶ 31–36). Haase contacted the Barrington Police, who eventually informed the Waldrons that Kozachyn had made disparaging remarks about Denise to them. (*Id*. at ¶ 36, 39).

On August 14, 2019, Carolyn received a letter from Kozachyn informing her that Denise must move out of Barrington Mews or else both Carolyn and Denise would be removed. (*Id*. at 40). Following receipt of this letter, Denise and Carolyn became very stressed by the thought of homelessness and separation. (*Id*. at ¶ 43).

On August 20, 2019, Plaintiffs filed their IFP Complaint against Kozachyn, Cohen, Potter, Katz, Barrington Mews, AAH, and Paul & Katz, P.C. Plaintiffs also filed a Motion for Temporary Restraining Order ("TRO"). (Doc. No. 2). The Court granted Plaintiffs' IFP application but denied the motion for a TRO. (Doc. No. 3). On September 22, 2019, Carolyn passed away.[1] (Doc. No. 6 at 15). As a result, on September 26, 2019, Denise filed a second Motion for a TRO, which the Court denied. (Doc. No. 7).

Plaintiffs bring a host of federal and state law claims. Citing 42 U.S.C. § 1983 as their cause of action (Compl. at ¶ 9), Plaintiffs allege deprivation of state and federal rights, including their Sixth Amendment Right of Confrontation (*id*. at ¶ 58–60), their "Right of Contract, as protected by the Tenth Amendment," (*id*. at ¶ 60), and rights to life, liberty, and pursuit of happiness protected by the Declaration of Independence and the Tenth Amendment (*id*. at ¶¶ 78–87). Plaintiffs also advance a claim under N.J.S.A. §§ 52:27D-406–26 (*id*. at 55–57), state contract law for breach of Carolyn's lease (*id*. at ¶¶ 61–62), and federal and state laws of barratry and conspiracy (*id*. at ¶ 66).

## II. LEGAL STANDARD

---

[1] Although Carolyn's death would prevent her from serving as a Plaintiff should this case move forward, the Court does not consider that issue at this stage. Rather, the Court focuses only on whether the Complaint survives review pursuant to 28 U.S.C. § 1915(e)(2)(B).

3

District courts must review IFP complaints and *sua sponte* dismiss any action or appeal that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Whether a complaint should be dismissed under § 1915 because it fails to state a claim is assessed under the same standard as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Rhodes v. Maryland Judiciary*, 546 F. App'x 91, 93 (3d Cir. 2013).

When evaluating a 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

As Plaintiffs are *pro se*,[2] the Court is mindful of its "duty to construe [the] pleadings liberally and apply the applicable law, irrespective of whether [plaintiffs have] mentioned it by name." *Rose v. Ortiz*, Civil Action No. 14-1738 (CCC), 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

### III. DISCUSSION

Plaintiffs' Complaint can be broken down into Section 1983 claims, free-standing federal law claims, and state law claims. First, the Court addresses whether the Section 1983 claims satisfy the threshold "under color of law" requirement. Second, the Court examines the merits of these claims to see if they should be dismissed with or without prejudice. Third, the Court analyzes Plaintiffs' free-standing federal claims, before concluding by declining to exercise supplemental jurisdiction over their state law claims.

#### A. Under Color of Law

Plaintiffs attempt to bring a number of constitutional claims against Defendants using Section 1983 as a cause of action. All of these claims fail because Defendants have not alleged sufficient facts to prove that any Defendant was acting under color of law as required by Section 1983.

Section 1983 "provides a remedy for the violation of rights created by federal law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). To make out a Section 1983 claim, "a plaintiff must demonstrate: (1) a person deprived him of a federal right; and (2) the person

---

[2] Carolyn executed a power of attorney to a Richard A. Haase (Doc. 1-4 at Ex. B) who has apparently been aiding Plaintiffs in this litigation (Compl. at ¶ 30–36). It is completely unclear to this Court what Haase's relation to Plaintiffs is, especially given his residence in Missouri City, Texas. (*Id*. at ¶ 30). While the Court is concerned that Haase may be laboring under the delusion that a "power of attorney" gives him the same rights and obligations as a licensed legal practitioner, the Court expresses no opinion as to whether Haase is engaged in the unauthorized practice of law, and treats Plaintiffs as it would any other *pro se* litigants.

who deprived him of that right acted under color of state or territorial law." *Id*. The standard for satisfying the "under color of law" requirement in Section 1983 cases is effectively the same as for demonstrating state action under the Fourteenth Amendment. *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169 n.1 (3d Cir. 2004) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). The plaintiff bears the burden of proof to establish that the Defendant was acting under color of law. *Groman*, 47 F.3d at 638.

Plaintiffs sole allegation connecting Defendants to a government is that Barrington Mews "is an apartment complex that is subsidized by the State of New Jersey." (Compl. at ⁋ 25). As such, the Court must consider whether a bare allegation that an apartment complex receives government subsidies is sufficient to satisfy the "under color of law" requirement.

Supreme Court precedent makes clear that state subsidization is not enough to transform private entities into state actors. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522 (1987) ("The Government may subsidize private entities without assuming constitutional responsibility for their actions."); *see also Rendell-Baker* 457 U.S. at 840 (finding that private school was not state actor despite receiving 90% of its budget from the state). In addition to subsidization, the plaintiff must generally show that the private conduct was regulated or controlled by the state in some fashion. *See Groman*, 47 F.3d at 641–42 (finding that first aid squad subsidized by government was not state actor where it "did not have its professional decisions dictated or guided by the state").

This principle holds true as applied to housing operators. *See, e.g.*, *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239 (5th Cir. 1982) (finding that private housing operator was not state actor despite receiving subsidies because government personnel were not involved in their day-to-day operations); *Solivan v. Valley Housing Dev. Corp.*, Civil Action No. 08-2722, 2009

WL 3763920, at *8–9 (E.D. Pa. Nov. 9, 2009) (finding that private non-profit housing provider receiving federal subsidies was not state actor); *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 364–65 (S.D.N.Y. 2001) (finding that private housing operator was not state actor despite receiving state subsidies because there was no evidence connecting the government to the challenged policy). As such, Plaintiffs' allegation that Barrington Mews receives state subsidies is insufficient to make Barrington Mews suable under Section 1983. And as no Defendant is a state actor, Plaintiffs' Section 1983 claims fail on this threshold issue.

### B. Constitutional Claims

Plaintiffs bring three constitutional claims through the vehicle of Section 1983. Two these claims must be dismissed with prejudice because they have no basis in law. The first of these is Plaintiffs' claim that Katz, in coordination with Kozachyn, Barrington Mews, and AAH, disparaged Plaintiffs to the Barrington Police Department and New Jersey Social Services in violation of Plaintiffs' Sixth Amendment Right of Confrontation. (Compl. at ¶ 60).

The Confrontation Clause excludes witness testimony against a criminal defendant "unless the witness appears at trial, or, if the witness is unavailable, the defendant had prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). Plaintiffs are not criminal defendants, nor have Katz's statements been introduced against them in any proceeding. As such, the Confrontation Clause is completely irrelevant to the conduct Plaintiffs allege.[3] This claim is dismissed with prejudice.

Second, Plaintiffs appear to claim that Defendants have violated the lease Carolyn executed with Barrington Mews and AAH, which in turn violated Plaintiffs' Right of Contract protected by

---

[3] Despite their insistence that the Confrontation Clause is implicated, Plaintiffs' claim may be best construed as a state law defamation claim. If that is the case, the Court declines to exercise supplemental jurisdiction.

7

the Tenth Amendment. (Compl. at ¶¶ 61–62). The Tenth Amendment does not "independently secur[e] any substantive constitutional rights cognizable in a § 1983 cause of action." *Soder v. Chenot*, Civil No. 4:CV-06-1522, 2007 WL 4556670, at *4 (M.D. Pa. Dec. 20, 2007) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 748–49 (9th Cir. 1986)). As such, this claim is also dismissed with prejudice.

Finally, Plaintiffs seek damages for Defendants' attempts to break up their family unit in violation of the Declaration of Independence and the Tenth Amendment. (Compl. at ¶¶ 79–85). As with the Tenth Amendment, "Section 1983 does not grant a cause of action for violations of the Declaration of Independence." *Endl v. New Jersey*, 5 F. Supp. 689, 703 (D.N.J. 2014). However, the Complaint actually quotes the text of the Fourteenth Amendment, not the Tenth. (Compl. at ¶ 80). As such, the Court believes Plaintiffs were actually invoking their Fourteenth Amendment Substantive Due Process rights, specifically the fundamental right of family members to live together. *See Moore v. City of East Cleveland, Ohio*, 431 U.S. 494 (1977) (recognizing this fundamental right). Although this claim is not viable because Plaintiffs have failed to plead state action, it is only dismissed without prejudice.

### C. Barratry & Conspiracy

Plaintiffs also bring free-standing claims against Defendants for barratry and conspiracy. Plaintiffs appear to allege that Defendants conspired to prevent Plaintiffs from obtaining certain state documents they needed to provide AAH in order for Denise serve as Carolyn's live-in caretaker. (Compl. at ¶¶ 72–76). Throughout this process, Katz wrote letters directly to Carolyn despite the power of attorney Carolyn had executed for Denise. (*Id*. at 67–70). Plaintiffs allege that each such contact was an instance of barratry.

The Court believes that Plaintiffs' conspiracy claim is best interpreted as a claim that Defendants conspired to violate their constitutional rights. As with Plaintiffs' other constitutional claims, it is dismissed without prejudice for failure to plead state action.

Barratry is the tort of "[v]exatious incitement to litigation." *Black's Law Dictionary* (11th ed. 2019). But while state law may provide a cause of action for barratry, federal law does not. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law."); *see also Rodgers v. U.S. Steel Corp.*, 508 F.2d 152, 163 (3d Cir. 1975) ("There is no federal common law offense of barratry."). As such, this claim is dismissed with prejudice.

### D. State Law Claims

Finally, the Court addresses Plaintiffs' remaining claims under N.J.S.A. §§ 52:27D-406–26, state contract law, and the state tort law. (Compl. at ¶¶ 55–57, 62–64, 66–77). Having dismissed all of Plaintiffs' federal claims for the reasons above, and without any affirmative justification for deciding the remaining state law claims, the Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (instructing that after dismissing original jurisdiction claims, district courts "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). Accordingly, Plaintiffs' remaining state law claims are dismissed.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B). An Order shall issue.

Dated: 10/01/2019                                               /s/ Robert B. Kugler
                                                                                      ROBERT B. KUGLER
                                                                                      United States District Judge